# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TARA TOTTEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | **AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | 1:08CV489 |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, Tara Totten, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

## Procedural History

On March 2, 2006, Plaintiff filed a DIB application (protectively filed on February 22, 2006), and an SSI application (protectively filed on February 28, 2006), both alleging a disability onset date of January 1, 2006. Tr. 61, 64. The applications were denied initially and upon reconsideration. Tr. 35-38. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). Tr. 51. Present at the

hearing, held on October 23, 2007, were Plaintiff and her non-attorney representative. Tr. 26.

By decision dated November 14, 2007, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 19. On May 21, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 1, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairment: Charcot Marie tooth disease (20 CFR 404.1520(c)) and 416.920(c)).

Tr. 21. He continued:

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work.

2

Case 1:08-cv-00489-TDS-WWD   Document 16   Filed 01/21/10   Page 2 of 19

Tr. 23. The ALJ determined that Plaintiff was unable to perform her past relevant work. Tr. 24 (citing 20 C.F.R. §§ 404.1565 and 416.965).

Plaintiff, born on March 23, 1971, was thirty-six years old at the time of the ALJ's decision, regulatorily defined as "a younger individual age 18-44." See id. (citing 20 C.F.R. §§ 404.1563 and 416.963). The ALJ found that Plaintiff has at least a high school education and can communicate in English. He added that transferability of job skills was not an issue in the case. Based on these factors and Plaintiff's residual functional capacity (RFC), the ALJ concluded that a finding of "not disabled" was directed by Rule 201.28 of the Medical-Vocational Guidelines. Tr. 25 (citing 20 C.F.R. Part 404, Subpt. P, App. 2). Accordingly, the ALJ decided that Plaintiff had not been under a "disability," as defined in the Act, from January 1, 2006, through the date of his decision.

**Analysis**

In her brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ failed to (1) evaluate the non-treating physician's opinion; (2) find that she met Listing 11.14; and (3) provide substantial evidence to support his credibility finding. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[1] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).[2]

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration, by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. Section 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by

---

[1] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

[2] The regulations applying these sections are contained in different parts of Title 20 of the Code of Federal Regulations (C.F.R.). Part 404 applies to federal old-age, survivors, and disability insurance, and Part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions of the two sets of regulations are identical, the citations in this report will be limited to those found in Part 404.

4

substantial evidence and whether the correct law was applied.  Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).  Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).  Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational.  Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Issues

1.  Physician's Opinion

Administration regulations require that all medical opinions in a case be considered. Section 404.1527(b). All "medical source"[3] opinions, regardless of its giver, are evaluated

> pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527 (2005).

Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (footnote omitted). Courts, however, "often accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." Id. (quoting Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001)).

Neurologist Catherine Weymann diagnosed Plaintiff with, and treated her for, Charcot-Marie-Tooth[4] type 1A ("CMT"). See Tr. 143-46; 181-86. On April 11, 2006, the state Disability Determination Services sent Plaintiff to Dr. Alan Rosenbloom, of "Occumed Walk In," for a consultative examination.[5] Plaintiff complains that the ALJ erred in failing to assess this doctor's opinion.

---

[3] See Section 404.1502.

[4] One of "at least three distinct hereditary neuromuscular disorders, all of which share the common features of pes cavis [exaggerated foot arch] and marked wasting of the more distal portion of the limbs, particularly the peroneal muscle groups." Stedman's Medical Dictionary 179 (28th ed. 2006) [hereinafter, "Stedman's"].

[5] "A consultative examination is a physical or mental examination or test purchased for you at our request and expense from a treating source or another medical source, including a pediatrician when appropriate." Section 404.1519

As Plaintiff points out, Dr. Rosenbloom found that she experienced hyperesthesia[6] below her knees. Tr. 160. Yet Dr. Marshall Freeman, a Diplomate of the American Board of Electrodiagnostic Medicine, had found that Plaintiff had a "reduced sensation to light touch." Tr. 141. And Dr. Weymann found a "very mild sensory diminution to pinprick." Tr. 185.

Dr. Rosenbloom described Plaintiff's gait as "antalgic and somewhat ataxic," Tr. 160, but Dr. Weymann found that Plaintiff's "straight away gait is fairly normal without a foot drop," Tr. 182. For Dr. Rosenbloom, Plaintiff could not tandem walk, stand on her heels and toes, or squat and rise. Tr. 160. Dr. Weymann observed, however, that Plaintiff's tandem gait was intact, she could balance on either foot, and she could toe walk. Tr. 185. In July 2006, at Plaintiff's last specialist visit for CMT, Dr. Weymann stated that Plaintiff could not heel walk, but noted that she was wearing neither ankle foot orthotics nor high top shoes. Tr. 181. She gave Plaintiff a prescription for high top custom made shoes.

Dr. Rosenbloom saw that Plaintiff's deep tendon reflexes were absent at the ankle, Tr. 160, but this symptom dated from at least July 1998, when Plaintiff first saw Richard Sikora, D.P.M., a fellow of the American College of Foot and Ankle Surgeons, see Tr. 199. Yet Plaintiff had earnings every year from 1985 through

---

[6] "Abnormal acuteness of sensitivity to touch, pain, or other sensory stimuli." Stedman's at 920.

2006, with apparent substantial gainful activity from 2000 through 2005. See Tr. 69-70; 74-75.

In his "Discussion," Dr. Rosenbloom wrote that some of Plaintiff's pain could be relieved with medications, but that the side effects therefrom "make it very [sic] for her to function otherwise." Tr. 160. And the ALJ noted Plaintiff's testimony that her medications "cause her to be sleepy during the day." Tr. 24. But this complaint is not evident in any of Plaintiff's medical records, and the ALJ found it not to be credible because Plaintiff continued to drive her children to school and to sports activities. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) ("The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life."); see also Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007) ("The ALJ is responsible for deciding . . . the credibility of a claimant's subjective testimony about her limitations.").

Dr. Rosenbloom also offered that traveling would be difficult for Plaintiff because of "her lower extremity pain and balance problems," Tr. 160, although Dr. Weymann had found that Plaintiff could balance on either foot, Tr. 145. Finally, Dr. Rosenbloom concluded that, "[c]ertainly standing, moving about, lifting, and carrying are obviously affected by the pain in her legs and her inability to balance well." Tr. 160. Yet thereafter, Dr. Weymann noted that Plaintiff "does not have that much in the way of weakness" and "was doing fairly well on Cymbalta." Tr. 182. Plaintiff also testified that she did not "do much falling" and that medicine helped her pain.

8

Tr. 30, 33. Dr. Weymann added that Plaintiff "is actually able to walk around wearing sandals without using her orthotics." Id.

The court agrees with Plaintiff that the ALJ erred in not assessing Dr. Rosenbloom's opinion, but not that such error requires reversal. First, Dr. Rosenbloom's observations differ markedly from those of her treating physicians and, thus, is inconsistent with the rest of the medical records. See Section 404.1527(d)(4). Cf. Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986) (affirming that "we have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record"). "'[A] non-examining physician's opinion cannot, by itself, serve as substantial evidence . . . when it is contradicted by *all of the other evidence* in the record.'" Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986 (quoting Martin v. Sec'y of Dep't of Health, Educ. & Welfare, 492 F.2d 905, 908 (4th Cir. 1974)).

Further, none of Plaintiff's physicians ever ascribed to her the limitations which Dr. Rosenbloom did, and their opinions would be due more weight based on their treatment relationship with Plaintiff and their status as specialists. See Section 404.1527(d)(2). Last of all, there is no error as Dr. Rosenbloom's observations are reflected in the ALJ's RFC finding that Plaintiff can perform sedentary work, defined in the regulations as involving

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount

> of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Section 404.1567(a). Thus, the ALJ's RFC finding accounted for Plaintiff's alleged difficulties with lower extremity pain and balance, and limitations in standing, lifting, walking, and carrying. See Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 536 (6th Cir. 2001) (holding failure to address treating source's opinion harmless error when the ALJ adopted the treating source's recommendations). Therefore, in spite of the ALJ's error, the court will not remand on this basis. See, e.g., Sanchez v. Barnhart, 467 F.3d 1081, 1082-83 (7th Cir. 2006) ("[I]n administrative as in judicial proceedings, errors if harmless do not require (or indeed permit) the reviewing court to upset the agency's decision."); Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (applying harmless error when "the ALJ's error . . . was inconsequential to the ultimate nondisability determination"); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

2. Listing 11.14

Plaintiff contends that, based on Dr. Rosenbloom's findings, she meets Listing 11.14. The "Listings," found at 20 C.F.R. part 404, subpart P, Appendix 1,[7] "is a catalog of various disabilities, which are defined by 'specific medical signs,

---

[7] Although the listings are contained only in part 404, they are incorporated by reference in Section 416.925 of subpart I of part 416.

symptoms, or laboratory test results.'" Bennett v. Sullivan, 917 F.2d 157, 160 (4th Cir. 1990) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). When a claimant satisfies a Listing by meeting all its specified medical criteria, he presumably qualifies for benefits. See id.

Section 11.14 is the Listing for peripheral neuropathies[8] "[w]ith disorganization of motor function as described in 11.04B, *in spite of prescribed treatment.*" Id. (emphasis added). Plaintiff's first problem with meeting this Listing is her documented noncompliance with treatment. Dr. Sikora had treated Plaintiff's lower extremity symptoms since July 1998. See Tr. 199. On February 9, 2006, he memorialized his phone conversation with Plaintiff, noting,

> I pointed out to [Plaintiff] that she failed to keep many of her appointments and follow-up and continued to schedule and cancel and reappoint and cancel. I, in fact, have probably not seen this patient in over 3 months and the only communication we have had have [sic] been by phone conversations and message tag back and forth.

Tr. 153. He further described Plaintiff as "noncompliant." Id.

Dr. Sikora added to this record later in the day, recounting a conversation which he had with his assistant, who had spoken with Plaintiff after the doctor's phone call:

> [S]he said that she is doing okay except she is only working half days at her job and she has to stand as a teller at the window and when she

---

[8] "Peripheral neuropathies can cause bilaterally symmetric hypesthesia, hyperesthesia, paresthesia, loss of temperature and vibratory sense, or causalgia. With more advanced disease, deep tendon reflexes and proprioception may be impaired." Stedman's at 1313.

11

has to stand in the cold, it aggravates her pain in the legs. *Again, I should note that . . . patient has never in the past three months asked for a treatment option or what can be done about her condition, only that she continues to ask for disability papers[.]*

Id. (emphasis added). Further, Dr. Weymann noted that Plaintiff was not wearing her orthotics, Tr. 181, 182, and Dr. Rosenbloom failed to note if Plaintiff was undergoing any treatment or wearing orthotics.

In addition, Section 11.04B requires, "Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)."[9] In turn, Section 11.00C explains:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances . . . which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

In other words, "There must be evidence of 'sustained disturbance' of plaintiff's manner of walking and standing that results in 'significant and persistent disorganization of motor function' that is measured by 'the degree of interference with locomotion.'" Valder v. Barnhart, 410 F. Supp. 2d 134, 139 (W.D.N.Y. 2006) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 11.00C, 11.04B, and 11.14).

---

[9] Contrary to Plaintiff's suggestion, Pl.'s Br. at 5, neither Section 11.00C, 11.04B, nor 11.14 further refers to Section 1.00E1, which involves musculoskeletal, rather than neurological, disorders.

12

The ALJ stated in his decision that Plaintiff's impairments did not meet or equal any of the Listings, Tr. 23, but he did not specifically mention or discuss Listing 11.14. He did, however, discuss Plaintiff's medical records, including Dr. Weymann's observations of fairly normal gait and ability to toe walk, and that Plaintiff could walk without orthotics. Tr. 22. The doctor also found Plaintiff to have normal bulk, tone, and strength throughout, with full strength in all extremities except for very mild weakness of the tibialis anterior.

For support, Plaintiff refers to Dr. Rosenbloom's report which noted an antalgic and ataxic gait and Plaintiff's inability to tandem walk, stand on her heels and toes, and squat and rise. But the doctor also wrote that Plaintiff's coordination, motor, and sensory functions were grossly intact and she exhibited no pathologic reflexes. Further, a state agency expert, who specifically referred to Dr. Rosenbloom's report, see Tr. 180, necessarily determined that Plaintiff did *not* meet a Listing in finding that she was not disabled, see Tr. 38. Cf. Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004) (finding that Disability Determination and Transmittal forms "conclusively establish that [consideration] has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review"). Unlike Dr. Rosenbloom, such experts "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." Section 404.1527(f)(2)(I).

13

Accordingly, Dr. Rosenbloom's observations, standing alone, do not render the ALJ's finding unsupported by substantial evidence. Cf. Smith, 795 F.2d at 345. As the ALJ's summary of the medical evidence accurately recites, the record does not contain substantial evidence of significant and persistent disorganization of Plaintiff's motor functions as described in Section 11.04B.

3. Credibility

Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the factfinder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also Section 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

Equally important, in determining the individual's credibility, the ALJ "must consider the entire case record," id. at 34485, and such determinations "should refer specifically to the evidence informing the ALJ's conclusion," Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citation omitted). Ruling 96-7p explains that a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record" and be "sufficiently specific" to inform

14

subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight. SSR 96-7p, 61 Fed. Reg. at 34484.

In this case, the ALJ found at step one that Plaintiff *did* have a medically determinable impairment that could reasonably be expected to produce her alleged symptoms. Tr. 24. At step two, however, the ALJ concluded that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Id. In such event, Ruling 96-7p advises the adjudicator to consider, in addition to the objective medical evidence, the following factors: the claimant's individual activities; the location, duration, frequency, and intensity of her pain or other symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication; non-drug treatment that the claimant has received for relief of symptoms; any measures other than treatment the claimant has used to relieve symptoms; and any other factors concerning the claimant's limitations and restrictions due to her symptoms. 61 Fed. Reg. at 34485 (citing Section 404.1529(c)(4)). The Ruling also provides that the factfinder is to consider medical signs and laboratory findings; medical opinions provided by medical sources; and statements about the claimant's symptoms and their effect on the claimant's ability to work. Id. at 34486.

The ALJ here, however, merely explained:

> The claimant states that she is disabled and needs assistance from her family for household chores. She alleged that her prescribed medications cause her to be sleepy during the day. She continues to

15

> complain of pain. However, the claimant stated that she continues to drive her children to school and sports activities.

Tr. 24. Plaintiff counters, however, with her testimony: that she limits her driving; she does not "drive that much"; she might "run [her children] to practice," but that is "just around from the house it's not too far." Tr. 30.

The court agrees with Plaintiff that the ALJ's discussion is inadequate. This court is not authorized, on review, to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, the issue before the court is not whether Plaintiff "is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. The court is unable to evaluate a decision where the ALJ has not built an "'accurate and logical bridge from the evidence to [his] conclusion' so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (quoting Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002)) (alteration in Scott). See also DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) ("The Secretary must present us with findings and determinations sufficiently articulated to permit meaningful judicial review.").

The ALJ here did not address the gist of Plaintiff's testimony, which was her claim of disability based on her alleged inability "to stay focused, to stay woke, the pain, walking, and just not able to function." Tr. 31. Plaintiff claimed that her medications make her "tired, not able to function," Tr. 30, that she "take[s] naps all day long," and that she "stay[s] asleep all day," Tr. 31. Cf. Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002) ("Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations."). At the end of the day, she takes her medications and she is "back out." Id. Yet her pain medication "keeps me woke," and prevents her from sleeping well at night. Id. See SSR 96-7p, 61 Fed. Reg. at 34486 (finding internal consistency of a claimant's statements to be a "strong indication of credibility"). Further, Plaintiff's complaints of her medication side effects are nowhere reflected in her medical records. See id. (a strong indication of credibility is the consistency of the claimant's statements with other information in the case record).

The ALJ fails to rely on Plaintiff's non-compliance with treatment recommendations or disinterest in seeking effective treatment, as indicated by Dr. Sikora. See Mickles, 29 F.3d at 930 ("[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility."). Further, Plaintiff's part-time teller work, perhaps as late as March 2006, see Tr. 203,

17

suggests that she was not as impaired as she stated.[10] Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (working at a job while applying for benefits is an activity inconsistent with complaints of disabling pain). Accordingly, the court finds that it must remand this case for the ALJ to consider the whole record and provide substantial evidence in his decision to support his credibility finding.

**Conclusion and Recommendation**

For the foregoing reason, the decision of the Commissioner is not supported by substantial evidence and the correct legal principles were not applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **REVERSED**, and that the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this recommendation. To this extent, Plaintiff's motion for summary judgment (docket no. 12) seeking a reversal of the Commissioner's decision should be **GRANTED**. To the extent that

---

[10] And the court must wonder at Plaintiff's multiple pregnancies, see Tr. 22, when, in a household consisting of one adult and two young children, see Tr. 29, she claims to be unable to stay focused or awake or simply just to function.

Plaintiff's motion seeks an immediate award of benefits, it should be **DENIED**. Defendant's motion for judgment on the pleadings (docket no. 14) should be **DENIED**.

_____
WALLACE W. DIXON
United States Magistrate Judge

January 21, 2010